# SUPREME JUDICIAL COURT,

FOR THE

## WESTERN DISTRICT,

1856.

COUNTY OF CUMBERLAND.

WASHINGTON WOODWARD, *in Equity,*
*versus* JAMES COWING & *als.*

The parties to a voluntary association, must sustain to each other the rela-
tion of partners, and the association itself must constitute a partnership *in
law,* in order to clothe the Court with equity jurisdiction in reference to its
affairs.

The power of this Court to hear and determine in equity all cases of partner-
ship, where the parties have not a plain and adequate remedy at law, is con-
ferred by statute, and to that alone the Court must look for its authority.

An association, each member of which agrees in writing to pay the sum sub-
scribed by him for the purpose of building a meeting-house, which, when
completed, is to be the property of the subscribers in the proportions of the
amounts invested in it by them respectively, is not a partnership.

If the parties are joint owners or tenants in common, having a distinct or
independent interest in the property, although that interest is undivided,
and neither can dispose of the whole property or act for the others in rela-
tion thereto, but only for his own share and to the extent of his own sev-
eral right, they are not co-partners, and this Court has no equity power in
such case.

In ordinary partnerships, and in the absence of fraud on the part of the pur-
chaser, each partner has the complete *jus disponendi* of the whole partner-
ship interests, and is considered to be the authorized agent of the firm.

VOL XLI.          2

Woodward *v.* Cowing.

BILL IN EQUITY. The plaintiff was one of twelve persons who became parties to the following agreement:—

"Brunswick, April 19, 1847.

"For the purpose of building a meeting-house to be occupied by the East Brunswick Baptist Church and Society, to be located where the old meeting-house now stands, we, the subscribers, agree and promise to pay the sum annexed to our individual names. We further agree and promise to pay one-fourth of the sum by us individually subscribed, on the first of July next into the hands of a committee, chosen by the subscribers, to contract for and superintend the building of said house, and the other three-fourths as it shall be wanted by said committee to meet their contract with the undertaker of said house. The subscribers shall choose a committee of three from themselves, whose duty it shall be to contract for the building of said meeting-house on the most advantageous terms practicable. The meeting-house being finished will be the property of the subscribers in proportion to the amount invested by each individual, and shall be offered for sale on such terms as the majority of the subscribers shall determine. The above shall all be null and void and of no force in law, unless one thousand dollars shall be pledged for the object by good and responsible names."

The sum of twelve hundred dollars was subscribed by them and the house erected; which cost considerably more than that sum. The plaintiff alleges, that he advanced and paid out a considerable amount over and above his subscription or his proportion of the whole expenditure, and he seeks by this bill to recover from his associates their relative proportions and to obtain an equitable adjustment of the affairs of the association. The other facts sufficiently appear in the opinion of the Court. The case was heard upon bill, answer and proof.

*W. G. Barrows & S. Fessenden,* for complainant, contended:—

1. The complainant and respondents constituted a limited partnership in the transaction to which the suit relates, being

jointly interested in proportion to the amount originally subscribed by each. Bouv. Law Dic., title Partnership, p. 294, Sec. 2, 3, 5, 7; Story on Partnership, § § 75, 76, 77, c. 5, p. 109.

That they sustained this relationship to each other, appears from the answer referring to the original agreement, and from the acts of the parties taking possession of the house and making sale of the pews and materials remaining as common property.

2. Being thus associated, an action at law could not be maintained by one of the parties against the others, and his only remedy to procure an adjustment of the affairs of the association, is by this process in equity. R. S. c. 96, § 10.

3. The acts and declarations of each of the respondents, in relation to the transaction, are, under the circumstances of the case, evidence against all the others; especially those acts and declarations made and performed at the meetings of the association. Greenl. on Ev. vol. 1, c. 11, § 174, 178; *Van Reinsdyke* v. *Kaw*, 1 Gall. 630, 635; *Gatchell, Adm.*, v. *Heald*, 7 Greenl. 27, 28; *Cady* v. *Shepherd*, 11 Pick. 408.

4. The defence that the contract was with A. C. Raymond, cannot avail, because the association, by taking possession of the house and making sale of the pews and the materials, without a settlement with Raymond, or recognizing his contract, annulled the contract, and took the property subject to the claims of those who had aided in the erection of the house, and thereby impliedly assumed the bills which had accrued in the erection of the house. *Van Reinsdyke* v. *Kaw*, 1 Gall. 630, 635.

It is proved here by the admission of Cowing, filed in the case, by the declaration of others of the respondents, offered in evidence, by the record of the meeting of June 24, 1848, and by their acts in relation to other demands against said house, that they expressly assumed said bills, including the complainant's, which was particularly referred to by several of the respondents as due. Collyer on Partnership, Perk. ed., book 2, c. 3, § 307, 313.

5. It appears from the answer, and the records of the sale of pews, that the amount of sales already made exceeds the amount of bills paid on account of said house, and thus that the respondents have been either reimbursed in full for all sums advanced by them on account of their subscriptions or in payment of bills against said house, or that the association is in funds for that purpose, which ought to be equitably distributed among all the members of the company, including the complainant, in proportion to their respective claims.

*Shepley & Dana,* for respondents, contended, among other points made by them, that the court had no jurisdiction in the case; that the complainant's claim was against one A. C. Raymond, and not against the respondents; that the claim was within the statute of frauds; and that the bill was bad for want of parties.

TENNEY, C. J.—The complainant seeks relief from this Court, as having power to hear and determine in equity all cases of partnership, when the parties have not a plain and adequate remedy at law.

That the Court may be clothed with jurisdiction, the parties before us must sustain to each other the relation of partners, and the association of the several individuals must constitute a partnership in law. If the parties are joint owners or tenants in common, having a distinct or independent interest in the property, although that interest is undivided; and neither can transfer or dispose of the whole property, or act for the others in relation thereto; but merely for his own share, and to the extent of his own several right, they are not co-partners, and this Court has no power as a Court of equity to determine their case. R. S., c. 96, § 10; Story on Part. § 89.

It is settled, that in a partnership, each partner in ordinary cases, and in the absence of fraud on the part of the purchaser, has the complete *jus disponendi* of the whole partnership interest, and is considered to be the authorized agent of

Woodward *v.* Cowing.

the firm. He can sell the effects, or compound or discharge the partnership debts. 3 Kent's Com. Lec. 43; *Knowlton v. Reed*, 38 Maine, 246.

The parties to this bill and others associated together, for the purpose of erecting a meeting-house to be occupied by the East Brunswick Baptist church and society; and in writing they each agreed and promised to pay the sum set against their respective names. The subscribers were to choose from their own number a committee of three, whose duty was declared therein to be, to contract for the building of the meeting-house, which on being completed, was to be the property of the subscribers, in proportion to the amount invested by each individual, and to be offered for sale on such terms as the majority of the subscribers should determine.

The subscribers, having severally promised to pay each a certain sum, amounting together to the sum of twelve hundred dollars, met together, and chose a moderator, a clerk, a treasurer, and a building committee, consisting of five of their number, and the clerk made a record of the doings at that meeting, and of future meetings, which were called and held from time to time, until sometime in the year 1853. The building committee made a contract in behalf of the subscribers with A. C. Raymond to erect and finish the meeting-house above the underpinning, which seems to have been done by the subscribers themselves or others. The house was completed, so that the same was accepted at a meeting holden on June 24, 1848, by the subscribers to the contract, as appears by their records; many of the pews were sold in pursuance of authority from the subscribers, but the avails were insufficient to cover all the expenditures, in the erection and completion of the house. Several of the subscribers paid more than the sum promised, and others did not pay the full amount subscribed. The complainant alleges, that he has expended in and about the erection and completion of the house a large amount beyond the subscription; and in this bill he seeks an adjustment of the respective claims on account of payments made by him and other subscribers, more than

the sums promised by each, with each other, and with those who have paid less than the sums severally subscribed. It is insisted, however, by the defendants, that it was in furtherance of the contract with Raymond, and on his credit, that the complainant paid much of the money alleged to have been expended by him, and not on the credit of the other subscribers; and that they have never promised or in any way become liable to pay a greater amount than that severally subscribed by them.

Attempts were made by the complainant and others of the associates, to adjust their respective claims at meetings called for that purpose, but without success, many of them declining to do any thing promotive of that object, professing however to be in "readiness to pay if the others will."

On examination of the subscription contract, which is the basis of the association, and which does not appear to have been abandoned at any time after its inception, it is manifest, that the meeting-house was designed to be held by those, who should contribute funds for its erection, and for finishing the same, as owners in common, and not as a co-partnership. The building of the house was the object, which the subscribers sought; but they were to own in proportion to the amount of their investment, and the whole could be sold only on such terms as the majority of the owners should approve; therein withholding from each, the authority to act for the others. The parties have conformed to this principle, which they adopted at the beginning, and no one has attempted to act for the others, as a partner could act for the firm. But failing to unite in any measures for the purpose of reconciling their difficulties, the complainant has invoked the aid of this Court as a court of equity. We think the jurisdiction is not conferred by the statute, and it is to that alone, that it must look for its authority. *Bill dismissed with costs.*

RICE, CUTTING, GOODENOW, and HATHAWAY, J. J., concurred.